**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Case Number: 1:23-cv-24501-JAL**
**Lenard / Elfenbein**

**COURTNEY JENKINS,**

      **Plaintiff,**

**v.**

**AKIMA GLOBAL SERVICES, LLC**

      **Defendant.**

                  /
_____

## PRETRIAL STATEMENT

Defendant Akima Global Services, LLC ("AGS" or "Defendant"), by and through its undersigned counsel, and pursuant to S.D. Fla. L.R. 16.1(e) and the Court's Scheduling Order [D.E. 29, 30], hereby submits this Pretrial Statement.

### Certification

Undersigned Counsel certifies that it has attempted to communicate with Plaintiff for the cooperative preparation and submission of the Parties' Joint Pretrial Stipulation as provided for in this Court's Scheduling Order, D.E. 30, pp. 3-4. Counsel for AGS prepared, and provided to Plaintiff (relying on the contact information provided in D.E. 81), a draft pretrial stipulation in accordance with D.E. 30 and Local Rule 16.1(e), leaving space for Plaintiff's insertions and seeking any changes, as well as requesting a time to confer, but was unable to make contact with Plaintiff. Counsel attempted to contact Plaintiff via email on February 5, 6, 7, and 10, and telephonically on February 5 (leaving voicemail), and again on February 7. Plaintiff has not responded, nor has she reached out in any manner or at any time to coordinate the preparation of

1

the Joint Pretrial Stipulation. Accordingly, and in order to meet its obligation under the Scheduling Order, Defendant respectfully submits this Pretrial Statement.

**(1)      Statement of the Case.**

Plaintiff's Statement:

Plaintiff brings claims of discrimination pursuant to 42 U.S.C. §12101, the Americans with Disabilities Act, as amended, and 760.1 *et seq.*, Florida Statutes, the Florida Civil Rights Act, and retaliation pursuant to 42 U.S.C. §12101.[1]

Defendant's Statement:

AGS denies Plaintiff's claims and contends that Plaintiff suffered no adverse employment action, as she resigned. Further, AGS contends that Plaintiff was not disabled within the meaning of the ADA or the FCRA, nor was she a qualified individual within the meaning of the respective statutes. Further, AGS contends that Plaintiff was not discriminated against or retaliated against, and that Plaintiff has no evidence of pretext. Further, AGS contends that Plaintiff was not denied a reasonable accommodation; that the accommodations sought were not reasonable under the circumstances of this case; and that Plaintiff was provided an alternative reasonable accommodation. AGS denies Plaintiff's claims in their entirety.

**(2)      Basis of Federal Jurisdiction.**

This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that the matter in controversy is based on claims under 42 USC §12101, *et seq.*, the Americans with Disabilities Act ("ADA") and supplemental jurisdiction over Plaintiff's state law claims under the Florida Civil Rights Act, F.S. §760, *et. seq.* ("FCRA") pursuant to 42 USC § 1367, as such claims arise out of the same case or controversy.

---

[1] Because Plaintiff was non-responsive in the preparation of this Statement, this information was taken from the Second Amended Complaint, D.E. 37, ¶2.

(3)     **Pleadings Raising the Issues.**

    a.  Plaintiff's Second Amended Complaint [D.E. 37]

    b.  AGS's Answer and Defenses to Second Amended Complaint [D.E. 40]

(4)     **Pending Motions or Other Matters Requiring Action by the Court.**

    a.  AGS's Motion for Summary Judgment [D.E. 76][2]

    b.  AGS's Motion to Limit Testimony of Dr. Poitier [D.E. 75][3]

(5)     **Statement of Defendant's Proposed Facts.[4]**

    a.  AGS provides contractual services to the federal government at the Krome Service Processing Center ("Krome"), a federal detention center that temporarily houses immigrant detainees; AGS provides the people, equipment, and processes that safeguard federal buildings, military bases, detention centers and detainees.

    b.  Krome houses male immigration detainees awaiting deportation, many of whom have criminal histories, some violent, some with mental illness, and some who seek asylum.

    c.  Detention officers oversee housing and special management housing pods; escort detainees from one area of the facility to another (*e.g.*, from housing to recreation); supervise daily activities; maintain the perimeter and entrances to the facility; search entrants to the facility; and guard detainees who are receiving medical care offsite, among other tasks.

    d.  Officers must surveille, control, and secure detainees and be ready and able to respond to emergencies, including for example, a fight.

---

[2] Plaintiff has not opposed Defendant's Motion for Summary Judgment.
[3] Plaintiff has not opposed Defendant's Motion to Limit Testimony.
[4] Because Plaintiff was non-responsive in the preparation of this Pretrial Statement, Defendant has provided proposed facts. Such facts align with the Statement of Undisputed Material Facts (D.E. 77) provided in support of Defendant's pending Motion for Summary Judgment (D.E. 76), which are supported by material evidence. Plaintiff has not responded to Defendant's Motion for Summary Judgment, nor has she provided proposed facts for this Pretrial Statement.

e.  It is an essential function of a detention officer's role to meet the fitness for duty requirements for the position, pursuant to the Fitness for Duty policy, including being able to stand on their feet for a prolonged period, defined as at least 4 hours at a time, climb stairs, assist in the movement of an incapacitated adult, and physically defend or otherwise protect themselves and others in the event of an emergency or evacuation, among others.

f.  Officers' assignments vary and are made to meet business needs at any given time and to provide full coverage, and officers must be able to work any post needed or assigned.

g.  Officers are unable to leave their post unattended, depart at the end of their shift, or take a break without their shift relief or a relief roving officer assuming duties for security reasons.

h.  AGS is an equal opportunity employer and maintains a policy prohibiting discrimination, harassment, or retaliation of any type.

i.  AGS provides leave to employees who need it beyond their FMLA entitlement pursuant to the ADA and equivalent state laws, including the Florida Civil Rights Act.

j.  Employees taking medical leave provide medical documentation at the time of leave, and demonstrate fitness for duty through their doctor prior to returning to work.

k.  AGS utilizes the service of a third-party administrator, the Reed Group to handle medical documentation collection, review and certification of medical need for employee requests for leave and/or accommodation.

l.  Employees who need leave or another type of accommodation work directly with the Reed Group, which provides an avenue for medical assessment without involving direct line managers, and which offers a layer of privacy for employees.

m.  Once the medical records have been assessed and a need for accommodation established, the restrictions or limitations are then provided to management, who determines if the request is reasonable and can be accommodated.

n.  Jenkins is a former AGS employee who worked as a detention officer at Krome, hired on about July 1, 2014.

o.  As a detention officer, Jenkins was required to meet the fitness for duty minimums for the safety of herself and others.

p.  The ability to work varying detention officers' posts as needed was an essential function of her job.

q.  Post assignments varied as to the amount of standing or walking needed at any given time, and can be indoors or outdoors.

r.  Throughout her employment, Jenkins took FMLA leave, intermittent and continuous, multiple times, to care for family members, and for her own varying medical needs.

s.  When Jenkins exhausted her FMLA leave benefits, she was provided leave as needed under the ADA, as a reasonable accommodation.

t.  Jenkins saw multiple medical providers, including general practitioner, Luvernice Croskey, PhD, psychologist at Carter Wiggins; and psychiatrist, Dr. Joseph Poitier.

u.  In February 2022, Jenkins was approved for intermittent leave for plantar fasciitis.

v.  Jenkins's plantar fasciitis flare-ups affected her right foot, were unpredictable, caused "excruciating pain," and occurred when standing over two hours or walking for an hour.

w.  Jenkins alleges that as a result of her plantar fasciitis and the medication she was taking for mental health (Xanax), she was granted intermittent leave.

x. When Jenkins advised her supervisors and shift scheduler that she needed to avoid standing for long periods and working in the heat, she was accommodated and allowed to swap post assignments with other officers for less physical posts when possible.

y. Beginning in 2022 through at least August 16, 2024 (the time of Jenkins's deposition), she took Xanax, which makes her tired, drowsy, and sluggish, and if she was required to work in the sun, it also made her feel "faintish" and a bit "disoriented."

z. Dr. Poitier testified that such side effects could be the result of both Xanax and Remeron, another medication she was prescribed in 2023.

aa. On July 15, 2022, while working at a remote (off-site) hospital post, Jenkins returned late from her lunch break; Jenkins argued with her superiors that she was not as late as she was accused of being, and was written up for tardiness and unprofessional conduct.

bb. On August 22, 2022, Jenkins was written up for insubordination and disruptive behavior stemming from Jenkins being called into work on a day off.

cc. The following day, on August 23, 2022, Jenkins saw her provider, Dr. Jackson, who placed her on leave, and indicated that she "cannot walk during flareups," of her plantar fasciitis, which were "incapacitating" and meant she must be "out of work."

dd. Jenkins remained on approved intermittent approved leave through this period for her foot.

ee. On September 5, 2022, Jenkins emailed Project Manager Jones requesting a schedule change to avoid being around other employees who were aware of her disciplinary issues because they asked about it and she felt she was "looked at" differently.

ff. Jones indicated she would not direct changes to the post assignment but that the allegations of unfairness would be investigated.

gg. Jenkins's request to Jones made no mention of a "seated" post or plantar fasciitis.

hh. Jenkins submitted a grievance for unfair treatment via her union representative in response to both write-ups, and AGS management and the union representative met with Jenkins.

ii. Following these meetings, both disciplinary actions were rescinded because of the 'he-said/she-said' nature of the situations.

jj. These events were not in any way related to Jenkins's medical conditions.

kk. In September 2022, Jenkins was diagnosed for the first time with Post Traumatic Stress Disorder ("PTSD") and depression; she applied for and was approved for leave for stress and anxiety, a condition that she claims was caused because her plantar fasciitis was not accommodated by giving her a "seated post."

ll. This was the first time she had experienced a major depressive episode.

mm. Dr. Poitier suggested that her "psychological stress disorder" arose from her job setting, and "didn't occur from anything else."

nn. On September 27, 2022, Jenkins initiated a worker's compensation claim for "anxiety, depression, and stress illness/disorder stemming from several harassment, retaliation, and false charges of insubordination" that she claims "adversely affected [her] physical and mental health," and began on the "exact date" of July 15, 2022 (the date she was written up for tardiness and insubordination).

oo. Jenkins was again evaluated by Dr. Jackson on October 7, 2022, who submitted a medical evaluation form returning her to work; it indicated that she had ***no physical or mental impairments*** and that she could ***return to work with no restrictions on October 11, 2022***.

pp. This was the last time Jenkins's plantar fasciitis was addressed with respect to her employment.

qq. In December 2022, Jenkins was written up for losing her governmental credentials; she stated that they were stolen, however, and received no discipline.

rr. On or about January 5, 2023, Jenkins began a continuous medical leave of absence for mental health conditions.

ss. Dr. Jackson completed the medical leave certification form noting "Patient advised not to work," and that her situation required "prescription medication and avoidance of work."

tt. During this period, Jenkins sought treatment from Dr. Luvernice Croskey, PhD (social worker) upon referral from Dr. Jackson.

uu. Jenkins received short term disability ("STD") benefits from January through April 2023, then long term disability ("LTD") benefits, through January 5, 2024.

vv. In her short term disability application form, Dr. Croskey indicated that Patient "should not be involved in inmate care" and was "not capable of working."

ww. Although initially expected back to work on or around July 15, 2023 ("or as determined by the psychologist"), Jenkins remained on medical leave until her resignation on March 20, 2024.

xx. When Jenkins began leave on January 5, 2023, she was unable to work at all, an assessment also made by Dr. Jackson, who stated "patient is not capable of working."

yy. Jenkins's FMLA benefits were exhausted by February 14, 2023; but she was provided with ongoing leave beyond that date and continuously through her resignation in March 2024.

zz. On April 14, 2023, Jenkins filed a Charge of Discrimination with the EEOC (Charge No. 510-2023-04287) claiming that AGS failed to accommodate her with respect to her foot pain around August 9, 2022; within the charge, however she also admits that she was accommodated for a *different* condition (presumably her mental health needs).

aaa. The Charge was dismissed by the EEOC and a Right to Sue issued on November 20, 2023.

bbb. Dr. Poitier saw Jenkins for the first time on February 4, 2023.

ccc. Dr. Poitier agreed that in February 2023, Jenkins "should not be involved in inmate care."

ddd. By April and May 2023, both Dr. Croskey and Dr. Poitier agreed that Jenkins's "ability to handle daily stressors continues to be compromised by her level of depression and anxiety."

eee. Jenkins was scheduled to return to work on July 6, 2023.

fff. Dr. Poitier's records indicate that as of May 2023, Jenkins was in "no shape to return to work," and by June 28, 2023, it was questionable whether she could "handle [her] work schedule."

ggg. Jenkins submitted another medical form, completed by Dr. Poitier and dated June 25, 2023, that indicated that Jenkins could work only with no prolonged standing, defined as no more than 2 hours in an 8-hour day; that she should not work more than 32 hours per week; and that she should have breaks as needed, and indicated that such accommodations were needed due to medication that would otherwise impair her ability to safely perform her duties.

hhh. On June 28, Dr. Poitier submitted a supplemental letter stating that Jenkins *also* needed 8 hours off from work every two weeks *or* "as needed" for "unpredictable mental/physiological episodes and office visits."

iii. Dr. Poitier testified that it was not possible to tell when such episodes could occur, they could come at any time, and could come even if the requested accommodations were provided.

jjj. Jenkins testified that her symptoms sometimes completely prohibited her from working, were unpredictable, and varied in intensity.

kkk.  Dr. Croskey's notes from June 28, 2023, indicate that Ms. Jenkins was not feeling as if she could handle her work schedule, an assessment with which Dr. Poitier agreed.

lll. The documentation was reviewed by the Reed Group, and the specific restrictions requested were submitted to Project Manager Michelle Jones for review.

mmm.  Given the specific duties of the detention officer role, the essential functions of the job, and its inherent dangers, such restrictions were not reasonable and could not be safely accommodated.

nnn.  Jenkins was provided further leave of absence, as an alternative accommodation.

ooo.  On July 20, 2023, Dr. Poitier completed an additional form in which Jenkins sought additional leave from July 6, 2023 to January 3, 2024; Dr. Poitier indicated that Jenkins was unable to perform any of her essential job duties, and he advised "no work in any capacity."

ppp.  In Dr. Poitier's opinion, Jenkins was in no condition to work in any capacity and was not expected to get better for several months at least.

qqq.  Jenkins submitted another Health Care Provider Statement to AGS dated September 12, 2023, and signed by Dr. Poitier.

rrr. This form indicated that Jenkins suffered from physical and mental conditions that limited typical work assignments, and included restrictions indicating that Jenkins could

potentially have episodes of incapacity up to 4 times every 30 days lasting for a fully day; and that she could not stand more than two hours per day, and that her medication caused drowsiness.

sss. Such a restriction was not reasonable and deemed unsafe in light of the dangerous conditions and the need for officers to be mentally alert and physically fit for duty.

ttt. Because these restrictions could not be accommodated, Jenkins was provided ongoing leave as an alternative accommodation.

uuu.     On December 11, 2023, Jenkins accepted another job and began working full time as a bus driver for Miami-Dade County Department of Transportation Public Works.

vvv.     Dr. Poitier testified that such news "surprised" him, because Jenkins was coming off of a period of so much stress and distress, and he noted that Jenkins did not ask him to clear her for work.

www.     Jenkins continued to collect long term disability benefits through January 5, 2024.

xxx.     During the mediation process on March 13, 2024, AGS learned for the first time that Jenkins was employed in a new job, as AGS believed that Jenkins remained unable to work and was on a medical leave of absence.

yyy.     On March 20, 2024, Jenkins resigned from her employment with AGS.

zzz.     Jenkins remains employed as a bus driver with Miami-Dade County.

**6. Statement of Issues of Fact.**

a.     As to the claims of discrimination, retaliation and failure to accommodate, the specific acts or omissions relied upon.

b.     As to damages, the precise nature and extent of damages claimed.

**7.     Statement of Issues of Law on Which There Is Agreement.**

None.

8.   **Statement of Issues of Law Which Remain for Determination by the Court.**

      a.   Whether Plaintiff was a qualified individual with a disability within the meaning of the ADA and the FHRA.

      b.   Whether Plaintiff was subjected to unlawful discrimination.

      c.   Whether Plaintiff was subjected to unlawful retaliation.

      d.   Whether Plaintiff was unlawfully denied a reasonable accommodation.

      e.   Whether Plaintiff suffered any compensable damages as a result of conduct by Defendant.

9.   **Numbered List of Trial Exhibits.**

Defendant's Exhibit List is being filed concurrently with this Pretrial Statement.

10.   **Numbered List of Trial Witnesses.**

Defendant's Witness List is being filed concurrently with this Pretrial Statement.

11.   **Estimated Trial Time.**

Defendant estimates that trial will take two (2) to three (3) days.

12.   **Attorney's Fees.**

N/A

Dated: February 10, 2025

                                    Respectfully submitted by,

                                    */s/ Heather F. Crow*
                                    Heather F. Crow, Esq.
                                    Florida Bar No.: 115437
                                    THE KULLMAN FIRM
                                    2915 Kerry Forest Parkway, Suite 101
                                    Tallahassee, FL 32309
                                    T: (850) 296-1953| F: (504) 596-4189
                                    HFC@kullmanlaw.com

Amiel J. Provosty
*Admitted Pro Hac Vice*
THE KULLMAN FIRM
1100 Poydras Street, Suite 1600
New Orleans, LA   70163
T: 504-524-4162| F: (504) 596-4189
AJP@kullmanlaw.com
**Counsel for Defendant,**
**AKIMA GLOBAL SERVICES, LLC**

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on February 10, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, as well as by electronic mail and U.S. mail, prepaid first class, to:

Courtney Jenkins, Plaintiff
<u>courtneyjmiami@aol.com</u>
9401 NW 26th Ave.
Miami, FL 33147
***Pro se Plaintiff***

By: *<u>/s/ Heather F. Crow</u>*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
**Case Number: 1:23-cv-24501-JAL**
**Lenard / Elfenbein**


**COURTNEY JENKINS,**

    **Plaintiff,**

**v.**

**AKIMA GLOBAL SERVICES, LLC**

    **Defendant.**

                         /
_____

## DEFENDANT'S EXHIBIT LIST

| PRESIDING JUDGE:<br><br>Hon. Joan Lenard | | | | | | PLAINTIFF'S ATTORNEY – *pro se* | DEFENDANT'S ATTORNEY – Heather Crow and Amiel Provosty |
|---|---|---|---|---|---|---|---|
| TRIAL DATE(S): 2-week calendar commencing March 24. | | | | | | COURT REPORTER | COURTROOM DEPUTY |
| PLF. NO. | DEF. NO. | DATE OFFERED | OBJECTIONS/ STIPULATIONS | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS, BATES | WITNESS |
| | 1 | | | | | Miami Date 2023 W-2 Statement - Jenkins 109 | Plaintiff |
| | 2 | | | | | Miami-Dade payroll documents - Jenkins 110-119 | Plaintiff |
| | 3 | | | | | Lincoln Financial Group disability documents - Jenkins 124, 127-133 | Plaintiff |
| | 4 | | | | | Resignation letter – dated 3/20/2024 | Plaintiff Michelle Jones |
| | 5 | | | | | Personnel acknowledgement documents – D36-38, 75 | Plaintiff |
| | 6 | | | | | Employee Handbook D-464-483 | Plaintiff Michelle Jones |

| | | | | | | |
|---|---|---|---|---|---|---|
| | 7 | | | | | Fitness for Duty Policy – D484-489 | Plaintiff Michelle Jones |
| | 8 | | | | | Collective Bargaining Agreement – D-125-155 | Plaintiff Michelle Jones |
| | 9 | | | | | Minimum Standards for Employee Conduct & Qualifications for Duty – D-691-698 | Plaintiff Michelle Jones |
| | 10 | | | | | Position summary – D-701-703 | Plaintiff Michelle Jones |
| | 11 | | | | | Krome Facility Scheduling 2022 – D-683-689 | Plaintiff |
| | 12 | | | | | Text messages with Officer Mullins – D-101-102 | Plaintiff |
| | 13 | | | | | Employee Corrective Action form, 7/15/22 – D-85-86 | Plaintiff |
| | 14 | | | | | Employee Corrective Action Form, 8/22/22 – D-96-97 | Plaintiff |
| | 15 | | | | | Medical Evaluation Form, 10/7/22 (Dr. Jackson) – D-170-174 | Plaintiff |
| | 16 | | | | | FMLA Certification form 1/9/23 (Dr. Jackson) - D-175-177 | Plaintiff |
| | 17 | | | | | Medical Records – Carter Wiggins and Associates | Plaintiff |

| | | | | | | |
|---|---|---|---|---|---|---|
| | 18 | | | | | Medical Records – Quiet Minds, Dr. Poitier | Dr. Joseph Poitier Plaintiff |
| | 19 | | | | | Medical Evaluation Form, 6/14/23 (Dr. Poitier) – D-184-189 | Dr. Poitier Plaintiff |
| | 20 | | | | | Supplemental letter, 6/28/23 (Dr. Poitier) D-190 | Dr. Potier Plaintiff |
| | 21 | | | | | FMLA Certification, 2/28/22 (Dr. Jackson) – D-704-707 | Plaintiff |
| | 22 | | | | | FMLA Certification, 8/23/22 (Dr. Jackson) – D-712-715 | Plaintiff |
| | 23 | | | | | FMLA Approval intermittent leave, 2/28/22-8/26/22 – D-708-710 | Plaintiff |
| | 24 | | | | | FMLA Certification, 7/20/23 (Dr. Poitier), D-191-194 | Plaintiff Dr. Poitier |
| | 25 | | | | | FMLA Certification, 9/12/23 (Dr. Poitier), D-199-207 | Plaintiff Dr. Poitier |
| | 26 | | | | | Schedule Request – 8/21/22 to Lt. Seymour | Plaintiff |
| | 27 | | | | | Email from Jessica Lopez, 3/24/23 – D-106 | Plaintiff |
| | 28 | | | | | Email from Maynard Ross, 4/4/23 – D-107 | Plaintiff |

| | 29 | | | | | Deposition transcript of Dr. Joseph Poitier, in the event of unavailability of the witness | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
## Case Number: 1:23-cv-24501-JAL
## Lenard / Elfenbein

**COURTNEY JENKINS,**

     **Plaintiff,**

**v.**

**AKIMA GLOBAL SERVICES, LLC**

     **Defendant.**

                             /

_____

## DEFENDANT AKIMA GLOBAL SERVICES LLC'S WITNESS LIST

| PRESIDING JUDGE: Hon. Joan Lenard | | | | | | PLAINTIFF'S ATTORNEY | DEFENDANT'S ATTORNEY |
|---|---|---|---|---|---|---|---|
| TRIAL DATE(S): | | | | | | COURT REPORTER | COURTROOM DEPUTY |
| PLF. NO. | DEF. NO. | LIVE or BY DEPOSITION | DIRECT (est.) | CROSS (est.) | ADDRESS | DESCRIPTION OF WITNESS | EXHIBIT(S) |
| | 1 | Live | 4 hrs. | | 2915 Kerry Forest Pkwy, Ste 101 Tallahassee, FL 32309 | Michelle Jones – AGS's defenses, information related to plaintiff's allegations, Plaintiff's employment, job description and essential functions, policies and procedures at Krome; Plaintiff's accommodation requests; | |
| | 2 | Live | 4 hrs. | | 9401 NW 26th Ave Miami, FL 33147 | Plaintiff Courtney Jenkins | |
| | 3 | Live | 2 hrs. | | 12955 Biscayne Blvd, Suite 320 Miami, FL 33181 | Dr. Joseph Poitier – Plaintiff's treatment | |
| | 4 | Live | 2 hrs. | | 2915 Kerry Forest Pkwy, Ste 101 Tallahassee, FL 32309 | Karen Sinanan – AGS's defendants, policies, Plaintiff's claims, Plaintiff's leave and accommodations granted; | |
| | 5 | Live | 2 hrs. | | 2915 Kerry Forest Pkwy, Ste 101 | Matthew Majesky – AGS's defenses, | |

| | | | | | Tallahassee, FL 32309 | Plaintiff's claims, working conditions, and job duties; | |
|---|---|---|---|---|---|---|---|